EDNA M. WILDER, Respondent, *v.* TROY SAVINGS BANK, Defendant and Interpleading Plaintiff. GILBERT A. CLARK, Interpleaded Defendant-Appellant. (Action No. 1.)

EDNA M. WILDER, Respondent, *v.* MANUFACTURERS NATIONAL BANK OF TROY, Defendant and Interpleading Plaintiff. GILBERT A. CLARK, as Executor of CHRISTINE M. GAY, Deceased, Interpleaded Defendant-Appellant. (Action No. 2.)

Third Department, June 1, 1964.

*Connolly, Mirch & Murphy* (*J. Joseph Murphy* of counsel), for interpleaded defendant-appellant.

*Tillott & La Fleche* (*Jacob M. Frankel* of counsel), for respondent.

HERLIHY, J. The actions were tried together before a jury acting in an advisory capacity which returned verdicts in favor of plaintiff. Thereafter the court found, as a matter of law, that the plaintiff was " entitled to both accounts in both banks as the surviving tenant of the joint tenancies created ".

These facts are not in serious dispute. Christine M. Gay, decedent, was an elderly woman confined to a nursing home, and prior to the arrangements in dispute here, had a joint savings account in the Troy Savings Bank with her sister, Marion Clark, for the purpose of having Mrs. Clark pay her bills and expenses. At her death Mrs. Clark was in possession of the bankbook for the account in the Troy Savings Bank and two other bankbooks belonging to the decedent for savings accounts in the Manufacturers National Bank of Troy in the sole name of decedent. Following the death of his mother (Mrs. Clark), the appellant, Gilbert A. Clark, executor of the will of Mrs. Gay, delivered the three bankbooks to her and received receipt therefor. Thereafter the owner of the nursing home sent for the plaintiff as the result of which the plaintiff had her name annexed to the bankbooks, the necessary bank authorizations being signed by Mrs. Gay. The plaintiff testified that she made periodic withdrawals during the remainder of Mrs. Gay's life for payment of her expenses.

It should be noted, while not material to the issue, that the will of Mrs. Gay made bequests to the plaintiff, her husband and daughter.

There was a variance in the proof surrounding the facts and circumstances as to Mrs. Gay designating the plaintiff as a joint tenant of the bank accounts.

A bank official testified on behalf of the plaintiff that the plaintiff informed him at the time of the transfer that the purpose thereof was " ' To pay my sister's bills ' ". The plaintiff, when testifying, could not remember the exact conversation with the bank official but did not deny it and in answer to a question stated " To take care of her affairs [Mrs. Gay], yes ". She stated that

she told another bank official that the reason for the transfer was "I told him she wanted my name on the bank books and that's all I could tell him". Irma Sloan, daughter of the plaintiff, testified to being with her mother after plaintiff picked up the bankbooks and stated that decedent, when questioned by plaintiff as to what she wanted done with the books, said "'I want you [plaintiff] to take them, take these three books,'" "'I want your name put on, the same as Molly [Marion Clark] had'", and then plaintiff said "'Molly has her name only on one book,'" and decedent said, "'I know. * * * You and I are the last in the family and what I have left after I am gone, I want it to be yours, * * * you can take care of me. When I am gone, all is to go to you.'" Subsequently, on cross-examination, she stated that decedent said "'You are all that I have left * * * There is just you and I * * * I want you to open these accounts the same as they are with Aunt Molly'".

Various arguments have been advanced by respective counsel with reference to the failing health of the decedent and her ability to know the nature of her act and whether or not an *inter vivos* gift was created but it seems to us that the only issue is whether there was "volition" on the part of the decedent.

Subdivision 3 of section 134 and subdivision 3 of section 239 of the Banking Law (see Banking Law, § 675, eff. June 1, 1965; L. 1964, ch. 157) were contained in the charge to the jury and argued by both parties on this appeal. These sections are primarily for the benefit of banking institutions and provide that payment by the bank during lifetime or after death in conformity with the requirements of the sections shall be a valid and sufficient release and discharge to the bank. They differ in this respect, subdivision 3 of section 134 is applicable to commercial banks, while subdivision 3 of section 239 is applicable to savings banks, and it contains the following addition: "The making of the deposit in such form shall, in the absence of fraud or undue influence, be conclusive evidence, in any action or proceeding to which either the savings bank or the surviving depositor is a party, of the intention of both depositors to vest title to such deposit and the additions thereto in such survivor."

In our opinion, the plaintiff failed to sustain the burden of proof. Volition, as applicable to joint bank accounts, means an awareness and willingness on the part of the depositor to establish the account, in this instance, to create a right of survivorship. (See *Matter of Creekmore*, 1 N Y 2d 284, 291; *Thomas* v. *Ives*, 14 A D 2d 366, mot. for lv. to app. den. 11 N Y 2d 644.)

We have determined that a writing of the survivor was confirmatory of the party's intent and purpose. (*Matter of Stanley,* 8 A D 2d 866; *Thomas* v. *Ives, supra.*) If such documentary evidence may be determinative of volition, likewise the failure to sustain the burden of proof as to volition by parol evidence should be sufficient.

From a review of the record, the preponderance of the evidence establishes that the conscious act and deed of the decedent were that the plaintiff should pay the expenses of Mrs. Gay as had been previously performed by Mrs. Clark. The only contradictory evidence was the testimony by the plaintiff's daughter, the import of which was substantially altered on cross-examination, and makes the testimony of such limited probative value as to fail to meet the required test of being clear and convincing. The presumption under the sections of the Banking Law does not become effective and enure to the benefit of the plaintiff.

The judgment and order should be reversed, on the law and the facts, and judgment for appellant directed.

. Gibson, P. J., and Aulisi, J., concur with Herlihy, J.; Hamm, J., dissents, and votes to affirm, in the following memorandum, in which Reynolds, J., concurs: There was sufficient evidence to sustain the order of the learned Justice at Trial Term, who was familiar with the atmosphere and texture of the trial and observed and heard the witnesses as the facts were developed. Moreover the parties agreed on a question which was submitted to an advisory jury in a charge which referred to the contention of alleged lack of " volition ". In the particular circumstances of this case and in the exercise of a sound judicial discretion we should not vacate the order and judgment under review by substituting our judgment for that of the Trial Term.

Judgment and order reversed, on the law and the facts, and judgment for appellant directed, with one bill of costs to each party filing brief payable out of the fund. Settle order.